UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
CRIM. NO. 17-CR-87 (PAM/SER)

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiff, | |
| v. | **DEFENDANT DOOLING'S MOTION TO SUPPRESS STATEMENTS** |
| SHAWN R. DOOLING, | |
| Defendant. | |

Defendant Dooling, by and through his undersigned counsel, hereby moves the Court to suppress the following statements: (1) Mr. Dooling's Rule 2004 Deposition on February 19, 2015, (2) The civil deposition of Mr. Dooling's wife, Tina Bahn Dooling (Mrs. Dooling), taken on January 9, 2014; and (3) The Rule 2004 deposition of Mrs. Dooling taken on February 17, 2015.

Ms. Dooling's depositions are inadmissible under each of the two prongs of spousal privilege. Mr. Dooling's deposition is inadmissible under the Fifth Amendment to the United States Constitution.

## Facts

Before this indictment was filed, Mr. Dooling was a defendant in a civil proceeding brought by the Minnesota Attorney General. The "civil case," like this criminal indictment, criticized Mr. Dooling's business practices (as well as those of his business, Renewable Energy SD (RESD)). Contemporaneous with the civil case, Mr.

Dooling and Mrs. Dooling declared bankruptcy – the "bankruptcy case." Both the civil case and the bankruptcy case were heavily litigated and Mr. Dooling and Mrs. Dooling were deposed in both cases.

In the civil case, Mr. Dooling was deposed on January 8, 2014, and Mrs. Dooling was deposed on January 9, 2014. In the bankruptcy case, Mr. and Mrs. Dooling were commanded to appear for a Rule 2004 deposition via subpoenas, and they were so deposed on February, 9, 2015 and on February 10, 2015. The "civil attorneys" (attorneys from the Minnesota Attorney General's Office and attorneys of the Trustee) conducted both depositions.

The criminal investigation was well underway by this time. But the government concealed the existence of the criminal investigation and concealed that the civil attorneys were – and had been – feeding information they obtained from their investigation to the FBI and the United States Attorney's Office. Their doing so deprived Mr. Dooling of a meaningful choice of whether to assert his Fifth Amendment Rights. The government's surreptitious acts should not be rewarded. The testimony should be suppressed.

## **Argument**

1. <u>Mrs. Dooling's testimony in both the January 9, 2014 deposition and the February 17, 2015 deposition must be suppressed</u>

Mrs. Dooling's testimony should not be allowed to be used against Mr. Dooling because doing so would violate both prongs of the spousal privilege. *See, e.g., United States v. Thornton*, 2014 WL 4210125 at *8 (D. Minn. Apr. 9, 2014)(SRN/TNL) ("There

are two types of spousal privilege: (1) the confidential marital communications privilege, and (2) the adverse spousal testimony privilege." (citing *United States v. Porter*, 986 F.2d 1014, 1018 (6th Cir. 1993)).

Neither Mr. Dooling nor Mrs. Dooling could have asserted these privileges during the civil depositions because "The United States Supreme Court has implied that spousal privileges are only applicable in criminal cases." *Id.* (citing *Hawkins v. United States*, 358 U.S. 74, 77 (1958)). Accordingly, the privilege was never waived.

a. The confidential marital communications privilege applies

For the confidential marital communications privilege to apply, there are three conditions: "(1) At the time of communication there must have been a marriage recognized as valid by state law; (2) the privilege applies only to []utterances or expressions intended by one spouse to convey a message to the other [...] and (3) the communication must be made in confidence." *Porter*, 986 F.2d at 1018.

Condition (1) is easily met. Mr. and Mrs. Dooling had a bona-fide marriage and had been married for 26 years before the first deposition was taken.[1]

Conditions (2) and (3) are met because the civil attorneys elicited testimony on private marital communications during both depositions. In the January 9, 2014 deposition, See, for example, the following:

- Exhibit A at 12:4-5 ("Q: Who would ask you to sign checks? A: Shawn.");

- Exhibit A at 17:8-14 ("Q: Have you heard of a company or -- doing business as name of SRD Properties? A: Yes. Q: What is that? A: I don't know. Q: Where have you heard of it? A: Shawn."); 17:18-21 ("Q: Have you heard of a company or

---

[1] Exhibit A, Tina Dooling Deposition of January 9, 2014 at 7:23-8:1.

3

-- doing business as name of SRD Properties? A: Yes. Q: What is that? A: I don't know. Q: Where have you heard of it? A: Shawn.");

- Exhibit A at 27:16-17 ("Q: Who decided to make the donation? A: Shawn.");

- Exhibit A at 30:10-12 ("Q: And do you recall any circumstance where you were asked by Shawn to sign the check made out to cash? A: I don't remember.").

Likewise, in the February 17, 2015 Rule 2004 deposition,[2] *See, e.g.*,

- Exhibit B at 9:10-14 (Q: Okay. So you're saying that even though it shows your name there, it was Shawn that was doing that? A: I'm saying that I was told to pay it and I would have paid for it).

- Exhibit B at 48:4-5 (Q: So all the years you've been with Shawn, you never asked him what his dad did for a living?)

The deposition testimony should be excluded to the extent it inquired into marital communications.

b. <u>The adverse spousal testimony privilege applies</u>

Regardless, the testimony should be entirely excluded under the adverse spousal testimony privilege, which protects someone from being forced to testify against their spouse. While the privilege must be exercised by the testifying spouse, *Porter*, 986 F.2d at 1018, Mr. Dooling contends Mrs. Dooling will assert the privilege.

The privilege can be asserted to bar any adverse testimony. *Thornton*, ... at *9 ("The Eighth Circuit has stated [...] that this privilege is not available if respondent fails to prove that their anticipated testimony would in fact be adverse to the other spouse's protected interests." (citing *In re Martenson*, 779 F.2d 461, 463 (8th Cir. 1985)). Here the adversity condition is met because the questions asked by the civil attorneys were

---

[2] Exhibit B, Tina Dooling Rule 2004 Deposition of February 17, 2015.

4

designed to incriminate Mr. Dooling. Some of the questioning in the first deposition included:

- Exhibit A at 10:13-15 (Q: All right. Let's talk about RESD. What role have you played in either the management of the company or working at RESD?)

- Exhibit A at 10:19-20 (Q: Have you ever done any formal role there where you had any type of responsibility?)

- Exhibit A at 11:8-9 (Q: Have you ever played any role with the finances or bookkeeping for the company?)

- Exhibit A at 20:10-14 (Q: And, again, when you were going through, did you see the page that lists you as a partner – A: Yes. Q: – in RESD? Does that surprise you? A: No.)

- Exhibit A at 21:23-24 (Q: What vehicles do you and your husband currently have?)

- Exhibit A at 27:20-28:14 (Q: Showing you what's been marked as Exhibit 86, is that your signature on the bottom check? A: Yes. Q: Who's the check made out to? A: Griffin Dooling. Q: He's your son? A: Yes. Q: Do you know the purpose of the check? A: Yes. He was working at the Shawn's office for the summer, and he created -- helped create the website. Q: So this was a payment of wages or salary? A: I would guess. Q: Is it something else? Since you say you guess, I guess I'm not sure what you mean by that. Do you know any more about what it is? A: No. Q: And why did you sign the check? A: Shawn probably wasn't there. Q: Do you specifically recall in this case?: A No.).

All of these questions could incriminate Mr. Dooling and could be relevant and prejudicial in this criminal case. The same is true of the February 17, 2015 deposition.

- Exhibit B at 9:11-16 (Q: Okay. Now, when Griffin was at NYU, how was his tuition paid? What was the source of the money for his tuition? A: You would have to ask Shawn. Q: You weren't involved in that? A: No).

- Exhibit B at 25:10-16 (Q: Did you know you son is the – claims to be the owner of Illinois Solar Group? A: Good for him. Q: Yeah. A: Good for him. What has he done wrong? Q: Well, he's helping your husband commit fraud.)

5

- Exhibit B at 36:1-18 ([Discussing the source of Griffin Dooling's tuition payments and concluding with] Q: It was most likely you or Mr. Dooling, correct? A: Yes).

The same subjects are featured in this criminal prosecution. The most direct connection is between the questions about Griffin Dooling and Count 5 of the indictment, which alleges Mr. Dooling wrongly transferred money to New York University where his son attended college.

Allowing the government to use Mr. Dooling's wife's deposition testimony – which was compelled by subpoena (Exhibit B at 47:12-16 (Q: [...] You are here today because you were subpoenaed to be here for this; correct? A: Yes.)) – against him would violate the spousal privileges.

2. Mr. Dooling's Compelled Deposition in the Bankruptcy Case on February 19, 2015 Must be Suppressed

Evidence obtained in a civil matter is – absent exception – generally admissible in a criminal prosecution. But this is a case where an exception applies. It would be a violation of Mr. Dooling's due process rights to allow testimony from his deposition into evidence.

> the government may conduct simultaneous civil and criminal proceedings without violating the due process clause [... but d]eception as to the purposes of the investigation, or using otherwise meaningless civil proceedings as a pretext for acquiring evidence for a criminal prosecution, taking advantage of a person who does not have counsel, or other special circumstances may invalidate the prosecution.

*United States v. Setser*, 568 F.3d 482, 492-93 (5th Cir. 2009) (internal quotations omitted) (citing *United States v. Posada Carriles*, 541 F.3d 344, 356 (5th Cir.2008)).

There are four such special circumstances present here:

The first special circumstance is that the depositions were conducted not by privately retained attorneys (the typical posture) but by government attorneys, specifically the Minnesota Attorney General (a Minnesota agent) and by the bankruptcy Trustee (a Federal agent). This places "government action" on both sides of the equation. *Accord United States v. Mehner*, 2008 WL 4891119 at *13, *14 (D. Neb. Nov. 12, 2008) (Strom, J., adopting the report and recommendation of Gossett, M.J.) (Noting "If the civil action in question was not filed by the government, then the defendant bears the burden of demonstrating that the civil proceeding was essentially a pretext for a criminal investigation" and further noting, in that case, "no government officials were present;"). That is unlike the case at hand, where state officials are aiding federal officials.

The second special circumstance is that Mr. Dooling was compelled to be present and testify in response to the subpoena issued by the Trustee, a Court-appointed officer.[3] Exhibit D at 40:9-16 ("Q: I'm showing you Exhibit Number 22. And that's just the Subpoena that was served on you to appear for a 2004 Examination; is that correct? A: Yeah, I guess. Q: I think it came through your attorney. A: Yeah[...]").

The third special circumstance is that the civil lawyers asked questions apparently designed to further the criminal prosecution. For example, the lawyers questioned whether Mr. Dooling made payments to NYU, Exhibit D at 81:16-84:25 ("Q: And it shows that this is an account in the name of Griffin Dooling. It's the 529; correct? A: Correct [...] Q: Okay. And the source of that money would have been you and your wife;

---

[3] The subpoena is attached as Exhibit C. It commands Mr. Dooling not to provide documents, but to provide testimony instead. The February 17, 2017 Rule 2004 Deposition of Mr. Dooling is attached as Exhibit D.

7

correct? [...]"), and questions designed to show impropriety relating to Mr. Dooling's use of business vehicles. Exhibit D at 120:10-20. Both subjects are relevant to this prosecution. This case is thus unlike *Mehner*, 2008 WL 4891119 at *15, where the Court found "The record strongly suggest[ed] that defendant Mehner was aware of the criminal investigation by the time he was deposed." Mr. Dooling did not have this awareness.

And the fourth and most critical "special circumstance" is the government's co-opting of the civil processes while concealing that a criminal case was incoming. The government concealed the fact that the civil attorneys were working hand-in-glove with the FBI and the United States Attorney's Office.

Mr. Dooling cannot now say who referred the case to the United States Attorney's Office or how the case was opened. But the information Mr. Dooling does have suggests the FBI and the United States Attorney's Office worked closely with the civil lawyers.

An FBI 302[4] confirms those parties were all working together as early as April 2013 – well before the 2014 and 2015 depositions were conducted.[5] That FBI 302 confirms "On 04/30/2013, FBI SA Jamie E. Rohrbaugh, USDA SA Tiffany Nelson and representatives from the Minnesota Attorney General's Office went to the former offices of RESD to search through the abandoned property."

---

[4] Attached as Exhibit E, Bates 12941
[5] As is typical, the United States Attorney's Office and the FBI issued Grand Jury Subpoenas, and the civil lawyers responded (See, e.g., Exhibit F, Bates 13934; Exhibit G, Bates 17425; and Exhibit H, Bates 17513), but the relationship (atypically) extended beyond that.

FBI documents also show the civil lawyers shared detailed information with prosecuting authorities – including work-product information on their impressions of witnesses. One FBI 302 discussed an early-2016 meeting attended by an FBI agent, the prosecuting Assistant United States Attorney, and two Minnesota Deputy Attorneys General.[6] This 302 discussed the Minnesota agents providing the federal agents (1) work-product summaries of telephone calls with three witnesses; (2) a copy of a video recorded by a witness and provided to the MN AG; and (3) other state filings and documents.

The three work-product summaries of the discussions with putative witnesses[7] shows an especially close relationship between the civil lawyers and the criminal agents. The ten-page document discusses the state attorneys' individual impression of the witnesses. For example, at page 6:

> "Shane sounded very reputable and I think he would make a good witness to provide basic factual information about business operations [...] The information he provided on Shawn's micromanagement of the company will be very helpful in regard to the personal liability claim. The information Shane provided [...] will also be very important in terms of the story we are telling. He could also be a good witness to get in basic information that we will need [...].

*Id.*

The civil lawyers also kept the FBI and the USAO apprised of what was happening in the civil case and bankruptcy case, including by sending depositions (for example, Griffin Dooling's) – to the FBI.[8]

---

[6] Attached as Exhibit I, Bates 13860
[7] Attached as Exhibit J, Bates 13895
[8] See, Exhibit K, Bates 13084, a June 2015 FBI 302 documenting that the Minnesota Agents sent the March 2015 deposition of Griffin Dooling and exhibits to the FBI.

9

The logical conclusion from the open communications channels – specifically the facts that the lawyers shared factual information, evidence, and even work product – is that the civil lawyers were acting as prosecutorial agents when conducting their investigation. This cooperation, along with the concealment of this cooperation from Mr. Dooling, is the most critical special circumstance which should be contemplated by the Court.

Although generally Fifth Amendment protection is waived if not proactively asserted, the same deceptive acts by the government in co-opting the civil processes and using them to develop facts for the prosecution means that Mr. Dooling could not have made a knowing waiver of his constitutional rights. Accordingly, the Fifth Amendment must bar his testimony compelled by government subpoena.

## Conclusion

For the aforementioned reasons, Mr. Dooling respectfully requests the Court issue an Order barring the use of testimony from his deposition or from either of his wife's depositions from the Court.

Respectfully submitted,

GASKINS BENNETT BIRRELL SCHUPP, LLP

Dated: __9/13/2017__     _s/ Andrew S. Birrell_
Andrew S. Birrell (#133760)
Ian S. Birrell (#0396379)
333 South Seventh Street, Suite 3000
Minneapolis, MN 55402
(612) 333-9500
ATTORNEYS FOR DEFENDANT