# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>　　　　　Plaintiff,<br>v.<br><br>Shawn Robert Dooling,<br><br>　　　　　Defendant. | **Case No. 17-cr-87 (PAM/SER)**<br><br>**REPORT AND RECOMMENDATION** |

Surya Saxena, Esq., United States Attorney's Office, Minneapolis, Minnesota, for Plaintiff.

Andrew S. Birrell and Ian S. Birrell, Esqs., Gaskins Bennett Birrell Schupp, LLP, Minneapolis, Minnesota for Defendant.

KATE M. MENEDEZ, United States Magistrate Judge

Currently before the Court is Defendant Shawn Robert Dooling's ("Mr. Dooling") Motion to Suppress Statements ("Motion to Suppress") [Doc. No. 34]. For the reasons stated below, the Court recommends that Mr. Dooling's Motion to Suppress be denied.

**I.   FACTS**

Mr. Dooling owned and was the president of Renewable Energy SD, LLC ("RESD"), which provided wind turbine services. (Indictment) [Doc. No. 1 ¶¶ 3, 10]. Specifically, RESD "would obtain, install, and maintain a functional wind turbine and wind turbine tower on land designated by" customers with whom RESD had contracts. (*Id.* ¶ 10). The government alleges that many of RESD's contracts were largely illusory. Instead of using proceeds from the signed contracts to meet contractual obligations, Mr. "Dooling [allegedly] took customers' money . . . and used [it] for his own personal use and benefit." (*Id.* ¶ 12).

The State of Minnesota initiated a consumer fraud action against Mr. Dooling on January 25, 2013. *See State v. Renewable Energy SD LLC*, No. 27-CV-13-1554, available at http://pa.courts.state.mn.us/default.aspx (access civil case records using case number "27-CV-13-1554") (docket of the civil proceeding against Mr. Dooling) (last visited Jan. 24, 2018).[1] RESD soon went out of business, and in June of 2014, Mr. Dooling filed for bankruptcy protection. *In re Shawn Robert Dooling*, 14-bk-42765 (Bankr. D. Minn.); *see also* (Ex. D, Attached to Aff. of Andrew Birrell in Supp. of Def. Dooling's Mot. to Suppress Statements, "Andrew Birrell Aff.") [Doc. No. 35-2 at 8] (Rule 2004 deposition transcript).[2]

Mr. Dooling was deposed in the bankruptcy proceeding on February 19, 2015. *See generally* (Ex. D). In addition to the bankruptcy Trustee, an attorney from the Minnesota Attorney General's Office, which was litigating the state civil fraud action, was present during the deposition. (*Id.* at 4). During the deposition, Mr. Dooling was asked about the sources of money used in certain transactions, including those between Mr. Dooling's son and Mr. Dooling's father, and the source of certain payments to NYU, where his son attended college. *See, e.g.*, (*id.* at 28–34, 80–83, 108–10). Mr. Dooling also answered questions regarding vehicles purchased by entities that he owned, including RESD. *See, e.g.*, (*id.* at 99, 100–02, 118–20).

Federal authorities were investigating Mr. Dooling's activities during the relevant time period as well, although that investigation seems to have been in its early stages between 2013 and 2015. (Ex. E, Attached to Andrew Birrell Aff.) [Doc. No. 35-3 at 2] (stating that on April 30, 2013, "FBI SA Jamie E. Rohrbaugh, USDA SA Tiffany Nelson and representatives from the

---

[1]   Mr. Dooling was deposed as part of the civil action on January 8, 2014. (Mot. to Suppress at 2). However, he does not seek to suppress any statements made at that deposition. (Mot. to Suppress at 6–10).

[2]   When referencing the exhibits attached to the Andrew Birrell Affidavit, CM/ECF pagination is used.

Minnesota Attorney General's office went to the former offices of RESD to search through abandoned property"); *see also* (Mot. to Suppress at 8–9). Information from both the civil action and the bankruptcy proceeding was forwarded to federal authorities by attorneys involved in the state civil case. (Omnibus Resp. to Def.'s Pretrial Mots., "Mem. in Resp.") [Doc. No. 40 at 18] ("It is true that the Minnesota AG's office provided the United States with documents in its possession pursuant to Grand Jury subpoenas, and that the Minnesota AG provided other work papers that were generated as part of the Minnesota AG's investigation.").

## II.   MOTION TO SUPPRESS[3]

Mr. Dooling seeks to preclude the government from using the testimony he gave during his bankruptcy deposition in its current criminal case against him. He argues that it would be a violation of his Fifth Amendment "due process rights to allow testimony from his deposition into evidence." (Mot. to Suppress at 1, 6). Although recognizing that generally such evidence would be admissible, he argues that the federal government improperly exploited the bankruptcy proceeding. (*Id.* at 6). Mr. Dooling argues that there are several special circumstances that support a finding of a constitutional violation warranting suppression notwithstanding the general proposition that "'the government may conduct simultaneous civil and criminal proceedings without violating the due process clause.'" (*Id.*) (quoting *United States v. Setser*, 568 F.3d 482, 492–93 (5th Cir. 2009)).

First, Mr. Dooling argues the bankruptcy deposition was "conducted not by privately retained attorneys . . . but by government attorneys." (*Id.* at 7). Second, he emphasizes that he

---

[3]   Mr. Dooling moved to suppress both his own deposition testimony and two depositions of his spouse. (Mot. to Suppress at 2–10). The government represents that it "will not seek to admit Tina Dooling's deposition testimony as substantive evidence." (Mem. in Resp. at 17). Therefore the Court will address only Mr. Dooling's deposition here, and will recommend that the Motion to Suppress Mrs. Dooling's testimony be denied as moot.

3

was compelled to participate in the deposition by a subpoena issued by the bankruptcy Trustee. (*Id.*). Third, Mr. Dooling argues that "the civil lawyers asked questions apparently designed to further the criminal prosecution." (*Id.* at 7–8). Lastly, he alleges that the "most critical" circumstance "is the government's co-opting of the civil process while concealing that criminal case was incoming." (*Id.* at 8). Mr. Dooling asserts that these circumstances combine to demonstrate that the depositions were conducted as a pretext for a criminal investigation that was already underway. (*Id.* at 7–10). Because the government allegedly exploited the bankruptcy proceeding to further its criminal prosecution, Mr. Dooling also states that he "could not have made a knowing waiver of his constitutional rights." (*Id.*). For this reason, Mr. Dooling seeks suppression because "the Fifth Amendment must bar his testimony compelled by government subpoena."[4] (*Id.*).

The government disagrees that suppression is required, arguing that the bankruptcy proceeding was a separate and independent proceeding that was not improperly manipulated to further criminal charges. (Mem. in Resp. at 17–19). The government asserts that Mr. Dooling's "baseless insinuations about the United States'" conduct are insufficient to establish a constitutional violation. (*Id.* at 17–22). Specifically, the bankruptcy proceeding that gave rise to the deposition resulted from Mr. Dooling's own bankruptcy filing, and the state civil fraud suit was initiated by the Minnesota Attorney General, rather than the federal government. (*Id.* at 18–19). To that end, the government also asserts that this is not a traditional parallel proceeding

---

[4] While not a model of clarity, Mr. Dooling's argument in this regard appears to implicate both Fifth Amendment protections against self-incrimination and his Fifth Amendment due process rights. In general, however, improper exploitation of parallel proceedings is analyzed as a due process claim. In this Report and Recommendation, the Court will also briefly address Mr. Dooling's arguments under a self-incrimination analysis.

because no federal agents were involved in the investigation of "the civil aspects of this case." (*Id.* at 19).

As such, the government argues there are a number of reasons why suppressions is not warranted: Mr. Dooling "does not identify any evidence suggesting that the United States had any role in the civil discovery process"; "there is no colorable suggestion" that government acted in bad faith "because both the civil actions had legitimate noncriminal purposes"; and there is no suggestion that "the government affirmatively or deliberately mislead [Mr. Dooling] about the likelihood that [his] statements could be used in a later criminal proceeding." (*Id.* at 19–22).

### III. DISCUSSION

The Court concludes that Mr. Dooling has failed to substantiate his burden that suppression is warranted. That is—whether viewed as a violation of Mr. Dooling's Fifth Amendment due process rights or rights against self-incrimination—there is nothing to suggest that the introduction in this criminal case of statements made during a deposition in a bankruptcy proceeding that he initiated will constitute a constitutional violation.

#### A. Legal Standard

The due process clause of the Fifth Amendment places limitations on the ability of government to utilize a civil proceeding, with its lesser constitutional protections, to develop evidence truly intended for use in the criminal arena. *See United States v. Kordel*, 397 U.S. 1, 12 (1970); *see also United States v. Grunewald*, 987 F.2d 531, 534 (8th Cir. 1993). As a result, the government may not develop a criminal investigation under the guise of a civil proceeding. *See Grunewald*, 987 F.2d at 534. Stated differently, it would be a "flagrant disregard of individuals' rights" to "deliberately deceive" someone into incriminating themselves in the civil context when "activities of an obvious criminal nature are under investigation." *Id.* Not all parallel civil-

5

criminal cases, however, violate the due process clause or other constitutional protections. *See United States v. Posada Carriles*, 541 F.3d 344, 354 (5th Cir. 2008) ("[T]he government may conduct simultaneous civil and criminal proceedings without violating the due process clause or otherwise departing from proper standards in administering justice." (citing *Kordel*, 397 U.S. at 11–12)).

Although there is no clear test in the caselaw for determining whether the government has improperly exploited a parallel proceeding, cases exploring the issue have identified a number of factors based on the totality of the circumstances that bear on the analysis. *See, e.g.*, *Kordel*, 397 U.S. at 12 (mentioning the absence of counsel in the civil proceeding); *Setser*, 568 F.3d at 492–93 (highlighting evidence demonstrating "strategic, intentional cooperation"); *Grunewald*, 987 F.2d at 534 (requiring "clear and convincing evidence" that the government "affirmatively and intentionally mislead" the defendant regarding the nature of the civil proceeding); *U.S. SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1387 (D.C. Cir. 1980) (en banc) (examining whether the civil proceeding has a legitimate non-criminal purpose).

One factor that has been explored in greater detail is the role of communications between the government and the suspect regarding the existence of a parallel proceeding. A mere failure to advise a suspect that a criminal investigation is underway does not generally rise to a constitutional violation. *Posada Carriles*, 541 F.3d at 354–55. Instead, there must be "affirmative [or] intentional deceit." *Grunewald*, 987 F.2d at 534. And, "the burden is on the subject of the investigation to prove that such misrepresentations were made." *Posada Carriles*, 541 F.3d at 355; *see also Setser*, 568 F.3d at 493 (finding nothing unlawful in the parallel civil and criminal proceedings because the defendant "point[ed] to no 'trickery' or cloaking of the

6

criminal investigation as civil" and "does not present evidence of strategic, intentional cooperation").

Against this backdrop, and in light of these various considerations, Mr. Dooling must demonstrate that the federal prosecutors were actually controlling or manipulating the civil proceeding in order to support a finding of an improper parallel proceeding. *See Setser*, 568 F.3d at 493. As explored below, none of the facts in this case suggest the government exerted improper control or otherwise manipulated the bankruptcy proceeding.

  **B.** **Analysis**

    **1.** **Due Process**

Mr. Dooling has failed to demonstrate a cognizable constitutional violation related to the government's use of his bankruptcy deposition. He is unable to establish that this case involves the sort of parallel proceeding warned of in *Kordel*, *Grunewald*, and related cases. And several facts present in this case create sharp distinctions from one in which due process is violated. Mr. Dooling relies on conclusory allegations of bad faith and collusion, but the record lacks any evidence to support such claims.

First, this case involves a bankruptcy initiated by Mr. Dooling, not a traditional parallel proceeding in which the government brings both a civil and criminal action premised on the same conduct. *See Using Equitable Powers to Coordinate Parallel Civil and Criminal Actions*, 98 Harv. L. Rev. 1023, 1023 n.5 (1985) ("Civil and criminal actions arising from the same facts are commonly referred to as . . . 'parallel proceedings . . . .'"). This is much more than a technical distinction: the constitutional concerns present when the government initiates a civil action to exploit its more liberal discovery rules or lesser constitutional protections to obtain information to be used in a planned criminal case simply do not exist under the circumstances

7

here. None of the jurisprudence suggests that it is necessary to suppress information voluntarily given during a civil proceeding that the defendant initiated. The government began its criminal investigation in 2013, or at least had enough interest in the possibility of an investigation to examine documents left behind at RESD's headquarters. (Ex. E) (stating that on April 30, 2013, "FBI SA Jamie E. Rohrbaugh, USDA SA Tiffany Nelson and representatives from the Minnesota Attorney General's office went to the former offices of RESD to search through abandoned property"). Mr. Dooling voluntarily filed for Chapter 7 bankruptcy protection on June 30, 2014. *In re Shawn Robert Dooling*, 14-bk-42765. Indeed, it strains credulity to suggest that the government was patiently waiting for Mr. Dooling to initiate his bankruptcy proceeding so they could somehow commandeer it for the purposes of obtaining additional information in the ongoing criminal investigation.

Second, there is no evidence that the federal law enforcement agents or prosecutors exploited the bankruptcy deposition. Critically, each of the factors the Court has identified above weigh against suppression in this instance. Mr. Dooling has failed to provide any evidence demonstrating "strategic, intentional cooperation." *See Setser*, 568 F.3d at 493. Neither federal agents nor Assistant United States Attorneys asked questions or appeared during the bankruptcy deposition. (Ex. D).

Mr. Dooling argues that the questions asked in the bankruptcy deposition support a finding "that the civil lawyers were acting as prosecutorial agents when conducting their investigation." (Mot. to Suppress at 10). This claim does not withstand close scrutiny. It is entirely expected for a Trustee conducting a Rule 2004 deposition to question transfers of assets and ownership of property and funds. *See* Fed. R. Bankr. P. 2004(b). Indeed, "[t]he Trustee['s] . . . statutory duty to investigate an alleged fraudulent act mandates a 2004

examination to ascertain the . . . transfer's circumstances." *In re Gross*, 121 B.R. 587, 591 (1990). There is nothing to suggest the Trustee of the bankruptcy proceeding was acting as a "prosecutorial agent" for later federal mail and wire fraud charges simply because questions predictably asked during the Rule 2004 deposition later proved relevant to the criminal case. Indeed, Mr. Dooling cites no authority, and the Court is aware of none, in which a similar bankruptcy proceeding is found to implicate due process concerns when used in a later criminal prosecution.

The question of whether federal prosecutors deceived Mr. Dooling in a manner that violates due process protections also weighs against suppression here. Mr. Dooling has failed to provide clear and convincing evidence that federal prosecutors made any misleading statements regarding the nature of his bankruptcy proceeding to lull him into waiving his constitutional rights. *See Grunewald*, 987 F.2d at 534. Instead, Mr. Dooling provides a conclusory allegation that he was unaware of the possible criminal charges and therefore the government acted surreptitiously in this regard. (Mot. to Suppress at 2, 10). Because there is no requirement that federal prosecutors warn a bankruptcy petitioner about an ongoing federal investigation, their failure to do so cannot support a due process violation here. *Cf. Posada Carriles*, 541 F.3d at 354–55; *Grunewald*, 987 F.2d at 534.

Additional facts support a finding that Mr. Dooling's due process rights were not violated, and will not be violated by the government's use of his bankruptcy deposition in the instant prosecution. The bankruptcy proceeding was intended for a legitimate non-criminal purpose. Critically, Mr. Dooling initiated the proceeding himself in an attempt to protect his assets from creditors. *Cf. Dresser Indus., Inc.*, 628 F.2d at 1387 (stating that civil proceedings intended for a legitimate non-criminal purpose undermine allegations of due process violations).

And Mr. Dooling was represented by the same counsel in both the bankruptcy case that he initiated and the civil fraud case. *In re Shawn Robert Dooling*, 14-bk-42675 (indicating that Mr. Dooling was represented by R. Daniel Rasmus, among others); *State v. Renewable Energy SD LLC*, No. 27-CV-13-1554 (listing "R Daniel Rasmus" as Mr. Dooling's retained counsel); *cf. Kordel*, 397 U.S. at 12. Any counsel could—and probably would—have advised him to use caution when making statements given that he was already the subject of a civil fraud suit and the bankruptcy deposition was designed to explore possible bankruptcy fraud. *See* Fed. R. Bankr. P. 2004(b). Because counsel representing Mr. Dooling in the civil fraud action was also counsel of record in Mr. Dooling's bankruptcy proceeding, he was fully aware of the details of the fraud claims and had intimate knowledge of the facts surrounding Mr. Dooling's business dealings. Concerns about federal prosecutors tricking an unsophisticated *pro se* investigative target are simply not present here.

Although he does not specifically challenge the admissibility of evidence generated in the State of Minnesota's civil fraud action, including his deposition in that proceeding, Mr. Dooling seemingly refers to the state case in support of his claim of improper collusion by the government overall. (Mot. to Suppress at 2, 7–9). But even it were relevant, there is nothing to suggest that the civil action initiated by the State of Minnesota was any more a pretext for Mr. Dooling's criminal prosecution than the bankruptcy proceeding. There is no evidence in the record that federal agents exerted any control over the state's proceeding. And the timing of the two investigations, a factor that other courts have found instructive in this regard, undermines Mr. Dooling's claims as well. *See, e.g.*, *United States v. Stringer*, 535 F.3d 929, 939 (9th Cir. 2008) ("It is significant to our analysis that the SEC began its civil investigation first and brought in the U.S. Attorney later. This tends to negate any likelihood that the government began the

civil investigation in bad faith, as, for example, in order to obtain evidence for a criminal prosecution."). Here, the government represents that "the Grand Jury investigation of this matter commenced in August 2013."[5] (Mem. in Resp. at 19). The State of Minnesota's investigation was already long underway, as it filed its civil action on January 25, 2013. *See State v. Renewable Energy SD LLC*, No. 27-CV-13-1554. Even considering that FBI Agents visited the vacant corporate offices at the end of April 2013, the state's investigation began well before then. (Ex. E at 2). Under *Stringer*, this fails to establish bad faith or pretext for bringing the civil action because the only record evidence establishes that the civil action predated any investigation by federal authorities. *Stringer*, 535 F.3d at 939. And as with the bankruptcy proceeding, Mr. Dooling has failed to identify any false or misleading statements made in the state action designed to conceal the federal investigation, and Mr. Dooling was represented by counsel in Minnesota state court. *See State v. Renewable Energy SD LLC*, No. 27-CV-13-1554 (listing "R Daniel Rasmus" as Mr. Dooling's retained counsel). At bottom, the Court cannot identify any case that supports Mr. Dooling's argument the State of Minnesota's involvement in the civil fraud action somehow renders use of his bankruptcy deposition unlawful in this federal criminal case.

    **2.    Self-incrimination**

Mr. Dooling also suggests that the use of his bankruptcy deposition could violate the Fifth Amendment right against self-incrimination, though he provides no substantive analysis to support this argument. (Mot. to Suppress at 10). Even had the claim been made more explicitly,

---

[5] In general, grand jury proceedings are sealed. *See* Fed. R. Crim. P. 6(e); *see also In re Grand Jury Proceedings Relative to Perl*, 838 F2d 304, 306 (8th Cir. 1988) ("Federal Rules of Criminal Procedure 6(e)(2) codifies the traditional presumption that grand jury proceedings may not be disclosed."). Regardless, there is nothing to suggest that the government is misrepresenting this fact and Mr. Dooling has not raised this as an issue. The Court therefore assumes the government's representation to be true.

it would be unavailing. The Fifth Amendment states in relevant part that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. However, as Mr. Dooling concedes, "Fifth Amendment protection is waived if not proactively asserted." (*Id.*); *see also Rogers v. United States*, 340 U.S. 367, 371 (1951) ("The privilege is deemed waived unless invoked." (internal quotation marks omitted)). It is well-settled that when allegedly incriminating information is voluntarily offered, the right against self-incrimination cannot be asserted after the fact to suppress the provided information. *Rogers*, 340 U.S. at 373–74.

It is undisputed here that Mr. Dooling never asserted his Fifth Amendment right against self-incrimination. The question therefore turns on whether Mr. Dooling's deposition statements were voluntary. *Cf. id.* The Court concludes that they were.

Mr. Dooling provides the notice of the disposition to suggest that he was "commanded to appear" at the bankruptcy deposition. (Mot. to Suppress at 2); (Ex. C, Attached to Andrew Birrell Aff.) [Doc. No. 35-1 at 99]. But his argument on this point conflates the notions of being required to appear at a deposition and being forced to answer questions in a criminal investigation, in situations where there are "substantial and real, and not merely trifling or imaginary, hazards of incrimination." *Marchetti v. United States*, 390 U.S. 39, 53 (1968) (internal quotation marks omitted). Critically, Mr. Dooling provides no evidence that his statements were "extracted by any sort of threats or violence"; were "obtained by any direct or implied promises"; or were the result of "any improper influence" as would typically give rise to a finding that the statements were not voluntarily made. *See Malloy v. Hogan*, 378 U.S. 1, 7 (1964). As explored above, there is nothing to suggest that the bankruptcy action was a pretext for Mr. Dooling's criminal indictment, and no evidence that the government deceived Mr.

Dooling with respect to the existence of a criminal investigation to extract incriminating statements from him at the unrelated bankruptcy deposition. And Mr. Dooling was represented by an attorney at his bankruptcy deposition, strongly undermining any claim of coercion or manipulation sufficient to render his statements involuntary. (Ex. D at 4). In other words, the same facts that support a finding that there is no due process violation also support the Court's conclusion that Mr. Dooling's waiver of his right to remain silent was voluntary. *See Malloy*, 378 U.S. at 7; *Rogers*, 340 U.S. at 371, 373–74.

For these reasons, the Court recommends that Mr. Dooling's Motion to Suppress be denied.

## IV.    RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Shawn Robert Dooling's Motion to Suppress Statements [Doc. No. 34] be **DENIED** as described herein.

Dated: January 26, 2018

                                          *s/Katherine Menendez*
                                          Katherine Menendez
                                          United States Magistrate Judge

### Notice

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore, not appealable directly to the Eighth Circuit Court of Appeals.

Under D. Minn. LR 72.2(b)(1) "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).