UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,                                    Crim. No. 17-87 (PAM/SER)

          Plaintiff,

v.                                                                                **ORDER**

Shawn Robert Dooling,

          Defendant.
_____

This matter is before the Court on Defendant Shawn Robert Dooling's Motion for Compassionate Release under the First Step Act. Dooling asserts that the current COVID-19 pandemic constitutes an extraordinary circumstance that calls for reducing his sentence to time served and ordering a period of supervised release. The Government opposes the Motion, arguing that Dooling does not warrant such extraordinary relief. For the following reasons, the Court denies the motion.

**BACKGROUND**

On August 29, 2018, a jury convicted Dooling on three counts of mail fraud, two counts of wire fraud, and one count of money laundering. (Docket No. 92.) The Court sentenced Dooling to 96 months' imprisonment, to be followed by 3 years' supervised release. (Docket No. 115.) The Court granted Dooling an extension to self-surrender on July 15, 2019. (Docket No. 117.) With credit for good time, Dooling is scheduled for release in May 2026. He is currently incarcerated at the Federal Prison Camp in Duluth, Minnesota ("FPC-Duluth").

**DISCUSSION**

The First Step Act allows the Court to order a defendant's release for "extraordinary and compelling reasons." Id. § 3582(c)(1)(A)(i).  Such reasons include a terminal illness, "a serious physical or medical condition," or other condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility."  U.S.S.G. § 1B1.13, cmt. n.1(a)(ii).  Dooling suffers from Type II diabetes, high cholesterol, neuropathy, autonomic dysfunction, psoriasis, and psoriatic arthritis.  (Dooling Mot. (Docket No. 124) at 1.)

Dooling submitted a request for release under the First Step Act to the Warden of FPC Duluth, and it was denied on April 8, 2020.  (Docket No. 129-1.)  Dooling has thus established that he complied with the First Step Act's exhaustion requirements.  18 U.S.C. § 3582(c)(1)(A).

Dooling argues that he is more vulnerable to COVID-19 because he has Type II diabetes.  Recent guidance from the Centers for Disease Control (CDC) makes clear that those suffering from diabetes are at increased risk of severe complications from COVID-19.  Centers for Disease Control and Prevention, Coronavirus Disease 2019 (COVID-19), People of Any Age with Underlying Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 6, 2020).  On April 16, 2020, Dooling was screened for risk factors associated with the virus, and the nurse noted that he met the criteria for diabetes, though his diabetes "does not require frequent monitoring."  (4/16/20 BOP Health Services Clinical Note (Docket No. 125) at 11.)  Dooling does not depend on

2

insulin. (1/16/20 BOP Health Services Clinical Note (Docket No. 125) at 48.) His diabetes has improved since he entered the BOP. (9/19/20 BOP Health Services Clinical Note (Docket No. 125) at 70.) His well-managed diabetes does not warrant compassionate release.

Dooling also contends that the medication he takes for his psoriasis and psoriatic arthritis place him at a greater risk for complications if infected with COVID-19. Indeed, the new CDC guidelines acknowledge that the immunosuppressant medications for those conditions may increase a person's vulnerability to the virus. Centers for Disease Control and Prevention, Coronavirus Disease 2019 (COVID-19), People of Any Age with Underlying Medical Conditions, (last visited July 6, 2020). However, notes from Dooling's March 19, 2020, clinic visit indicate that he had both psoriasis and psoriatic arthritis for 10 years, yet he never treated them before prison. (3/19/20 Clinic Notes (Docket No. 125) at 13.) Dooling has not established that he is not receiving necessary medical care or that he is unable to care for himself in prison. See U.S.S.G. § 1B1.13, application note 1(A).

FPC Duluth is taking significant steps to prevent the virus from spreading and isolate infected people. Only one inmate at FPC Duluth has tested positive for the virus. Federal Bureau of Prisons, COVID-19 Inmate Test Information, https://www.bop.gov/coronavirus/ (last visited July 6, 2020). Three other inmates arrived at FPC Duluth after testing positive at other facilities and were immediately quarantined upon arrival. (Olt Decl. (Docket No 129-2) at ¶ 2-4.) They shall remain isolated until testing negative on two subsequent tests. One additional inmate self-surrendered and tested

positive during the facility's standard period of quarantine. (Id. at 3.) The virus's presence at FPC Duluth does not alone constitute "extraordinary and compelling reasons" for the Court's reconsideration of Dooling's sentence. 18 U.S.C. § 3582(c)(1)(A)(i).

Even if Dooling's health conditions warranted compassionate release, the Court must also find that reducing his sentence would be prudent in light of the sentencing factors in 18 U.S.C. § 3553(a). Dooling did not accept responsibility for perpetuating a $13 million fraud on his victims. Allowing him to serve less than 15 percent of his sentence would not reflect the seriousness of his offense or the need to provide deterrence to others. The Court considered Dooling's health conditions at sentencing, and some of his conditions have improved since that time. (See 9/19/20 BOP Health Services Clinical Note at 70.) The § 3553(a) factors do not warrant a reduction in Dooling's sentence.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED that** Dooling's Motion for Compassionate Release (Docket No. 124) is **DENIED**.

Dated: July 7, 2020

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge